IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KENNETH FELDMAN, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV303 |
| | ) | |
| v. | ) | |
| | ) | |
| TD AMERITRADE HOLDING CORPORATION, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant TD Ameritrade Holding Corporation's ("Ameritrade") motion for summary judgment, Filing No. 44. This is an alleged breach of contract action as it relates to a stock option agreement, and it is properly brought before this court under 28 U.S.C. § 1332 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

At issue in this case are three documents: a Non-Qualified Stock Option Agreement ("Stock Option Agreement"), Filing No. 3, Attachment 1 (Exhibit A), Filing No. 45, Attachment 2 (Exhibit 1); Ameritrade's 1996 Long-Term Incentive Plan ("Incentive Plan"), Filing No. 45, Attachment 3 (Exhibit 2); and Kenneth Feldman's Executive Employment Agreement ("Employment Agreement"), Filing No. 45, Attachment 4 (Exhibit 3).

According to the amended complaint and the parties' briefs, on June 7, 2004,[1] plaintiff Kenneth Feldman ("Feldman"), a resident of Chicago, Illinois, entered into the Employment Agreement with Ameritrade, and the Stock Option Agreement, which remained subject to the terms of the Incentive Plan. Filing No. 145, Attachment 2, ¶ 8. Attorney David Wilson represented Feldman during negotiations of these agreements. The

---

[1]Defendant alleges that Feldman entered into the Stock Option Agreement on May 1, 2004. Filing No. 46, ¶ 1.

Employment Agreement was for a three-year term, and included a provision that it was subject to and governed by the laws of the State of Nebraska, without reference to principles of conflict of laws. Filing No. 145, Attachment 4, ¶¶ 2, 15 (a). The Employment Agreement afforded Feldman the opportunity to participate in the Incentive Plan, with the statement that the "[t]he vesting and exercisability of the Executive's outstanding stock awards will be treated in accordance with the terms of their respective grants or awards." Filing No. 145, Attachment 4, ¶ 6 (b).

The Stock Option Agreement gave Feldman the option to purchase a total of 125,000 shares of Ameritrade stock at $12.83 per share. Filing No. 3, Attachment 1 (Exhibit A). According to the vesting paragraph of the Stock Option Agreement, 31,250[2] shares would vest on the anniversary of the grant date every year until the sum was fully vested, with the proviso that with the exception of paragraph 4, no portion of the Option would vest after Feldman's termination, for any reason. *Id.* Paragraph 4(d) of the Stock Option Agreement provides that

> Upon Termination by the Company for Reasons Other Than Cause or upon Voluntary Resignation by the Executive for Good Reason or Termination of Employment Agreement at the end of the renewal term, if the Participant complies with the terms of Section 4 and 5 of the Employment Agreement, the Expiration Date shall be the one-year anniversary of the Participant's Date of Termination.

*Id.*

Section 4(g) of the Stock Option Agreement states that

> [u]pon a Change of Control, the Option shall immediately become 100% vested; however, while the Participant remains employed by the Company, the Option will only be exercisable to the extent it would

---

[2] 31,250 shares represents 25% of the total option to purchase 125,000 total shares.

2

> have vested according to paragraph 2 of the Agreement absent a Change of Control. If the Participant's employment with the Company is terminated by the Company without Cause or by the Participant for Good Reason within twelve months following a Change of Control, the Option shall become immediately exercisable and the Expiration Date of the Option shall be the two-year anniversary of the Participant's Date of Termination.

*Id.*

In turn, the Incentive Plan, to which the Stock Option Agreement remained subject to, provides that

> an Option may be exercised, in whole or in part, in accordance with the terms and conditions established by the Board or the Committee at the time of grant; provided, however, that no Option shall be exercisable after the Expiration Date (as defined in Section 11) applicable to that Option and no Option or any portion thereof will first become exercisable after the Participant's termination of employment with the Company.

Filing No. 45, Attachment 3, ¶ 6.4. Section 11(e) then defines the expiration date as, among other possible dates, the date of the Participant's termination of employment with Ameritrade for reasons other than retirement, death, or disability. Filing No. 45, Attachment 3, ¶ 11(e).

On September 2, 2005, Ameritrade terminated Feldman for reasons other than cause. Then, on January 24, 2006, Ameritrade acquired TD Waterhouse Group and Feldman's shares were adjusted upward, so the option to purchase a total of 125,000 shares under the Stock Option Agreement increased to a total of 162,137 at $9.90 per share.

The parties disagree on Feldman's rights under the Stock Option Agreement, and Feldman brought suit in this court seeking declaratory relief. Feldman requests that the court enter an order declaring that an additional 25% of shares are exercisable and vested

as of June 7, 2006, pursuant to the terms of the Stock Option Agreement, for a total vested share amount of 81,068.  Further, Feldman requests that this order state that if Feldman dies or becomes disabled before September 2, 2006, the one-year time period following his termination date, Feldman's option rights with respect to all 162,137 shares shall become fully vested according to the terms of the Stock Option Agreement.  Finally, Feldman asks that the order decree that if Ameritrade experiences a change of control on or before September 2, 2006, Feldman's option rights to all 162,137 shares shall immediately vest pursuant to the terms of the Stock Option Agreement.

Ameritrade filed a motion to dismiss that the court previously denied.  Filing No. 10, 31.  Now before the court is Ameritrade's motion for summary judgment at issue, wherein Ameritrade claims no genuine issues of material fact exist that in accordance with his Stock Option Agreement, Feldman was precluded from exercising any part of his option that had not vested as of the date of his termination, September 2, 2005.  Feldman opposes Ameritrade's request for summary judgment.

**Legal Standards**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).  Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995)*.*

4

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While courts evaluate facts in the light most favorable to the nonmoving party, "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.*, 167 F.3d 398, 401 (8th Cir. 1999). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

A stock option agreement is subject to the same rules of interpretation as an ordinary contract. *Langer v. Iowa Beef Packers, Inc.*, 420 F.2d 365, 368 (8th Cir. 1970). It is the court's responsibility to determine the construction and legal effect of a written contract, provided the meaning of the contract language does not depend on disputed extrinsic evidence. *Ohio Cas. Ins. Co. v. Union Pac. R.R. Co.*, 469 F.3d 1158, 1162 (8th Cir. 2006). Applying Nebraska law,[3] a determination of whether language is ambiguous is a question of law. *McCormack v. Citibank, N.A.*, 100 F.3d 532, 538 (8th Cir. 1996). Ambiguity exists if there is any doubt or uncertainty surrounding the meaning of the language or if it is fairly susceptible to more than one reasonable interpretation. *Kellogg v. Union Pac. R.R.*, 233 F.3d 1083, 1090 (8th Cir. 2000). "The terms of a contract are accorded their plain and ordinary meaning as an ordinary, average, or reasonable person would understand them." *Kellogg*, 233 F.3d at 1090. When a question exists as to the meaning of the contract language, the court will construe the language against the party that prepared the contract. *Brockley v. Lozier Corp.*, 488 N.W.2d 556, 565 (Neb. 1992).

**Analysis**

Defendant maintains that the Stock Option Agreement must be interpreted with both the Employment Agreement and the Incentive Plan, because the Stock Option Agreement states that it is subject to the terms of the Incentive Plan. According to defendant, no ambiguities exist that the Stock Option Agreement and the Incentive Plan provide for no

---

[3]The defendant maintains that Delaware law may be applicable in this case under the "internal affairs doctrine," because Ameritrade is a Delaware corporation. Regardless of whether Nebraska or Delaware law is applied, defendant concedes that no appreciable difference exists under either state law. Given no argument to the contrary, and finding that the contract was entered into and performed in Nebraska, the court will apply Nebraska law for purposes of this motion.

6

vesting after Feldman's termination of employment. Plaintiff, however, maintains that when read together, the Stock Option Agreement and the Incentive Plan have more than one potential interpretation.

The court finds that, by its terms, the Stock Option Agreement is susceptible to more than one reasonable interpretation, thus precluding summary judgment. Specifically, the court notes that paragraph 2 of the Stock Option Agreement provides for no vesting of the Option after Feldman's date of termination, with the exception of paragraph 4. Paragraph 4 of the Stock Option Agreement, entitled "Expiration of Option and Vesting and Excercisability Upon Termination and Change of Control," states that the "Expiration Date" for the Option shall be dictated by following subparagraphs. Filing No. 3, Attachment 1 (Exhibit A). Subparagraph 4(d), the relevant provision to this case, provides that

> Upon Termination by the Company for Reasons Other Than Cause or upon Voluntary Resignation by the Executive for Good Reason or Termination of Employment Agreement at the end of the renewal term, if the Participant complies with the terms of Section 4 and 5 of the Employment Agreement, the Expiration Date shall be the one-year anniversary of the Participant's Date of Termination.

*Id.*

On September 2, 2005, Ameritrade terminated Feldman. Looking solely at the Stock Option Agreement, this means that no shares could vest after September 2, 2005, unless paragraph 4 applied. To apply under the protections of subparagraph 4(d), Feldman must have been terminated for reasons other than cause, which is the case here, and have complied with Sections 4 and 5 of his Employment Agreement. Sections 4 and 5 pertain to issues of non-competition, non-solicitation, confidential information, and intellectual property. Filing No. 45, Attachment 4. According to the record, it is not contested that Feldman has

7

complied with these provisions. Therefore, looking at subparagraph 4(d), it appears that the expiration date of Feldman's Option is the one-year anniversary of his date of termination, September 2, 2006.

Herein lies the problem. Defendant contends that subparagraph 4(d) does not extend the *vesting date* for any portion of the Option beyond the date of termination of employment. Rather, defendant maintains that subparagraph 4(d) merely sets the deadline that vested options could be exercised when Ameritrade terminated Feldman's employment for reasons other than cause. In support of this contention is the provision of the Stock Option Agreement mandating that the Stock Option Agreement remains subject to the terms of the Incentive Plan. The Incentive Plan then provides that no Option will vest after termination of Feldman's employment.

Therefore, in light of the confusion surrounding whether subparagraph 4(d) controls the vesting date of Feldman's Option, the court finds that the Stock Option Agreement is ambiguous and summary judgment is denied. Even if the court found that the term was not ambiguous, there is conflicting extrinsic evidence regarding the actual intent of the parties, thereby presenting an issue of fact for a jury to resolve.

ACCORDINGLY, IT IS ORDERED that defendant's motion for summary judgment, Filing No. 44, is denied.

DATED this 31st day of May, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief U.S. District Court Judge